# No. 26-60077

## In the United States Court of Appeals
FOR THE FIFTH CIRCUIT

SATELLITE HEALTHCARE, INCORPORATED,

*Petitioner / Cross-Respondent*

v.

NATIONAL LABOR RELATIONS BOARD,

*Respondent / Cross-Petitioner*

On Petition for Review and Cross-Application for Enforcement of an Order of the National Labor Relations Board

## BRIEF OF PETITIONER/CROSS-RESPONDENT SATELLITE HEALTHCARE, INC.

MICHAEL E. KENNEALLY
BRENDAN J. ANDERSON
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000

*Counsel for Satellite Healthcare, Inc.*

# CERTIFICATE OF INTERESTED PERSONS

***No. 26-60077, Satellite Healthcare v. NLRB***

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Petitioner Satellite Healthcare, Inc. has no parent corporation and no publicly held corporation owns 10% or more of its stock.

2. Morgan, Lewis & Bockius LLP is Counsel for Petitioner.

3. Michael E. Kenneally is Counsel for Petitioner.

4. Brendan J. Anderson is Counsel for Petitioner.

5. Harry I. Johnson, III was formerly Counsel for Petitioner.

6. Littler Mendelson P.C. was formerly Counsel for Petitioner.

7. Ogletree, Deakins, Nash, Smoak & Stewart, P.C. was formerly Counsel for Petitioner.

8. Michael Moschel was formerly Counsel for Petitioner.

9. Erin O. Sweeney was formerly Counsel for Petitioner.

10. Amanda Ploof was formerly Counsel for Petitioner.

11. Respondent National Labor Relations Board is a federal agency.

12. Ruth E. Burdick in her official capacity as Deputy Associate General Counsel, Appellate and Supreme Court Litigation Branch, for the National Labor Relations Board.

13. Roxanne Rothschild, in her official capacity as Executive Secretary for the National Labor Relations Board.

14. Jill H. Coffman, in her official capacity as Regional Director for National Labor Relations Board – Region 20.

15. Jason Wong, in his official capacity as Field Attorney for National Labor Relations Board – Region 20.

16. McKenzie Langvardt, in her official capacity as Field Attorney for National Labor Relations Board – Region 20.

17. Brian D. Gee, in his official capacity as Administrative Law Judge of the National Labor Relations Board.

18. Service Employees International Union, United Healthcare Workers—West ("SEIU-UHW") is a labor union.

19. Weinberg, Roger & Rosenfeld is Counsel for SEIU-UHW.

20. Bruce Harland is Counsel for SEIU-UHW.

21. William Hanley is Counsel for SEIU-UHW.

Dated: June 10, 2026

s/ Michael E. Kenneally
MICHAEL E. KENNEALLY

*Counsel for Satellite Healthcare, Inc.*

## STATEMENT REGARDING ORAL ARGUMENT

Satellite Healthcare, Inc. respectfully requests oral argument. This petition for review presents important issues about the National Labor Relations Board's obligation under the Administrative Procedure Act to engage in reasoned decisionmaking and about the "excusable neglect" standard that the Board, the Supreme Court, and this Court apply when deciding whether to accept late filings. Oral argument is likely to assist the Court in resolving this appeal.

## TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS .......................................i

STATEMENT REGARDING ORAL ARGUMENT ................................iv

TABLE OF AUTHORITIES...................................................................vii

INTRODUCTION.................................................................................1

JURISDICTIONAL STATEMENT.........................................................4

STATEMENT OF ISSUES....................................................................4

STATEMENT OF THE CASE ...............................................................5

I. Legal background..........................................................................5

II. Factual and procedural background...............................................6

A. The ALJ finds a statutory violation and imposes various remedies, including compensatory damages. .........................7

B. Satellite's prior counsel moves for an extension of time to file exceptions to the ALJ's decision. ...................................9

C. Satellite retains new counsel and files a letter in support of accepting the late-filed exceptions and brief. ...................12

D. The Board denies the motion to accept the exceptions and brief and adopts the ALJ's decision in the absence of exceptions. .....................................................................14

SUMMARY OF ARGUMENT............................................................16

STANDARD OF REVIEW...................................................................18

ARGUMENT .......................................................................................19

## TABLE OF CONTENTS
(continued)

**Page**

I. The Board's refusal to consider Satellite's exceptions violated its duty to engage in reasoned decisionmaking. ........ 19

A. The Board had a duty to provide adequate reasons for declining to consider Satellite's exceptions. ........ 20

B. The Board's decision must be vacated because it failed to provide adequate reasons. ........ 23

II. The Board must accept the late-filed exceptions under the *Pioneer* standard. ........ 33

CONCLUSION ........ 40

CERTIFICATE OF SERVICE ........ 42

CERTIFICATE OF COMPLIANCE ........ 43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allentown Mack Sales & Serv., Inc. v. NLRB*,
522 U.S. 359 (1998) ........ *passim*

*Am. Baptist Homes of the W.*,
No. 32-CA-25247, 2011 WL 5822389 (N.L.R.B. Nov. 16, 2011) ........ 28

*Apple Inc. v. NLRB*,
143 F.4th 291 (5th Cir. 2025) ........ 4

*Associated Marine Equip. LLC v. Jones*,
301 F. App'x 346 (5th Cir. 2008) ........ 38

*Bennett v. GEO Grp., Inc.*,
No. 12-60017, 2013 WL 5916765 (5th Cir. May 22, 2013) ........ 40

*Bro-Tech Corp. v. NLRB*,
105 F.3d 890 (3d Cir. 1997) ........ 22

*Brown & Root, Inc. v. NLRB*,
333 F.3d 628 (5th Cir. 2003) ........ 18

*Brown-Forman Corp. v. NLRB*,
169 F.4th 646 (6th Cir. 2026) ........ 32

*In re Christopher*,
35 F.3d 232 (5th Cir. 1994) ........ 30, 31, 32

*City of Chanute, Kan. v. Williams Nat. Gas Co.*,
31 F.3d 1041 (10th Cir. 1994) ........ 35

*Coleman Hammons Constr. Co. v. Occupational Safety & Health Rev. Comm'n*,
942 F.3d 279 (5th Cir. 2019) ........ *passim*

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Dish Network Corp. v. NLRB*,
953 F.3d 370 (5th Cir. 2020) .................... 22

*Downs v. McNeil*,
520 F.3d 1311 (11th Cir. 2008) .................... 38

*Encino Motorcars, LLC v. Navarro*,
579 U.S. 211 (2016) .................... 20, 21

*Hiran Mgmt., Inc. v. NLRB*,
157 F.4th 719 (5th Cir. 2025) .................... 12, 13, 14, 40

*Jenkens & Gilchrist v. Groia & Co.*,
542 F.3d 114 (5th Cir. 2008) .................... 26

*KSL Claremont Resort, Inc.*,
344 NLRB 832 (2005) .................... 28

*Long Island Head Start Child Dev. Servs. v. NLRB*,
460 F.3d 254 (2d Cir. 2006) .................... 22, 25

*Michigan v. EPA*,
576 U.S. 743 (2015) .................... 21

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .................... 20, 21

*Nat'l Ass'n of Priv. Fund Managers v. SEC*,
151 F.4th 252 (5th Cir. 2025) .................... 21

*New Process Steel, L.P. v. NLRB*,
560 U.S. 674 (2010) .................... 34

*NLRB v. AllService Plumbing & Maint., Inc.*,
138 F.4th 889 (5th Cir. 2025) .................... 19

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*NLRB v. Arkema, Inc.*,
710 F.3d 308 (5th Cir. 2013) .......... 18

*NLRB v. Forsyth Elec. Co.*,
69 F. App'x 164 (4th Cir. 2003) .......... 22, 25

*NLRB v. Purnell's Pride, Inc.*,
609 F.2d 1153 (5th Cir. 1980) .......... 22

*NLRB v. Tri-Cnty. Elec. Coop., Inc.*,
No. 21-60887, 2023 WL 5040960 (5th Cir. Aug. 8, 2023) .......... 32

*NLRB v. U.S.A. Polymer Corp.*,
272 F.3d 289 (5th Cir. 2001) .......... 19

*Pennzoil Co. v. FERC*,
789 F.2d 1128 (5th Cir. 1986) .......... 21

*Penrod v. NLRB*,
203 F.3d 41 (D.C. Cir. 2000) .......... 22, 25

*Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*,
507 U.S. 380 (1993) .......... *passim*

*Razvi v. Dall. Fort Worth Int'l Airport*,
No. 21-10016, 2022 WL 4298141 (5th Cir. Sept. 16, 2022) .......... 33, 34

*SEC v. Chenery Corp.*,
332 U.S. 194 (1947) .......... 21

*Space Expl. Techs. Corp. v. NLRB*,
151 F.4th 761 (5th Cir. 2025) .......... 5

*Starbucks Corp. v. NLRB*,
173 F.4th 230 (5th Cir. 2026) .......... 19, 33

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Tesla, Inc. v. NLRB*,
86 F.4th 640 (5th Cir. 2023) .......... 19

*Thryv, Inc.*,
372 NLRB No. 22 (2022) .......... *passim*

*Tramont Mfg., LLC v. NLRB*,
890 F.3d 1114 (D.C. Cir. 2018) .......... 22

*Unitec Elevator Servs. Co.*,
337 NLRB 426 (2002) .......... *passim*

*United States v. Wynn*,
292 F.3d 226 (5th Cir. 2002) .......... 38

*Universal Camera Corp. v. NLRB*,
340 U.S. 474 (1951) .......... 18

**Rules**

29 C.F.R. § 101.11(b) .......... 34

29 C.F.R. § 102.2(c) .......... *passim*

29 C.F.R. § 102.2(d)(1) .......... 6, 23

29 C.F.R. § 102.46 .......... 5

29 C.F.R. § 102.48(a) .......... 5

Federal Rule of Civil Procedure Rule 60(b)(1) .......... 26, 33

**Statutes**

5 U.S.C. § 706(2)(A) .......... 20

29 U.S.C. § 153(b) .......... 34

29 U.S.C. § 160(c) .......... 5

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

29 U.S.C. § 160(e) .......... 4

Administrative Procedure Act .......... 16, 20

National Labor Relations Act .......... 1, 11, 18

## INTRODUCTION

The National Labor Relations Board has denied Satellite Healthcare, Inc. the opportunity to challenge the merits of an administrative law judge ("ALJ") decision that Satellite violated the National Labor Relations Act. The Board refused to accept Satellite's exceptions to the ALJ decision and supporting brief because the former was filed one day after the deadline and the latter followed within the week. Satellite had requested an extension of time before its deadline ran, as the Board's rules permit, but the Board denied that extension. Satellite also filed a motion to excuse the slight delay and letter explaining what had happened, how the delay was beyond Satellite's control, and why accepting the filing would not prejudice any party or the Board. The lack of prejudice in this case is exceptionally clear because at the time of the delay—and for months thereafter—the Board lacked a statutory quorum to act on Satellite's exceptions. Even so, the Board issued a cursory denial of Satellite's motion to accept the late submission without meaningfully explaining its rationale and with one Member dissenting.

The Court should vacate the Board's order for several reasons. To start, the majority's cursory rejection of Satellite's motion breached the

agency's duty to engaged in reasoned decisionmaking. That duty is fundamental in administrative law—not just to protect the interests of regulated parties but also to enable courts to fulfill their duty to review the agency's proffered rationale. So, for good reason, the Supreme Court, this Court, and other circuits have held the Board to this basic procedural requirement. That requirement is especially important where, as here, an agency's order substantially determines a party's rights. The Board's denial of Satellite's motion had the result of ending the agency proceeding and making the ALJ's order a final order of the Board. Yet the Board gave virtually no explanation for its action. The order must be set aside for this reason alone.

To make matters worse, the Board's cryptic decision suggests the agency applied a legal standard that contradicts the Supreme Court standard that the Board purports to apply. The Board claims to decide these types of motions under the equitable "excusable neglect" standard from *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 396 (1993). Here, however, the Board focused exclusively on whether the reason for delay was within Satellite's prior counsel's control. That strict approach "clearly conflicts with *Pioneer*'s

more lenient and comprehensive standard." *Coleman Hammons Constr. Co. v. Occupational Safety & Health Rev. Comm'n*, 942 F.3d 279, 283 (5th Cir. 2019) (reversing administrative agency decision based on this departure from *Pioneer*'s "excusable neglect" standard). *Pioneer* directs courts (and agencies) to weigh several factors including the prejudice to the parties, the length of the delay, and whether there is evidence of good faith. The Board's order does not address these factors at all and suggests that the reason for delay was dispositive. This evident departure from the applicable standard further warrants vacatur.

When the proper standard is applied, only one outcome is appropriate: the Board should consider the exceptions and brief in support of them. The record shows that the brief delay caused no prejudice and had no impact on the Board's proceedings—especially given the Board's lack of a quorum at the time and corresponding inability to act on the exceptions or brief. What's more, the reason for the delay was beyond Satellite's control. Satellite diligently sought to meet the filing deadline and was falsely informed by prior counsel that the exceptions had been filed on the due date as Satellite had instructed. Prior counsel had also sought an extension on the due date, as allowed by the Board's rules, although

the Board denied that extension for reasons not articulated in the Board's rules. There is no suggestion that those requests were made in bad faith.

For all these reasons, the Court should either vacate the Board's order adopting the ALJ decision or reverse and instruct the Board to consider Satellite's exceptions and brief in support.

## JURISDICTIONAL STATEMENT

The Board issued its order adopting the ALJ's decision in the absence of exceptions (the "Order") on February 9, 2026. Satellite petitioned for this Court's review on February 18, 2026. The Board applied for enforcement of the Order on February 25, 2026. This Court has jurisdiction because the Order is a final order of the Board, and venue is proper because Satellite transacts business within this Circuit. *See* 29 U.S.C. § 160(e), (f). The petitions and cross-application are timely because the Act imposes no statutory deadline for such filings. *See, e.g.*, *Apple Inc. v. NLRB*, 143 F.4th 291, 296 (5th Cir. 2025).

## STATEMENT OF ISSUES

1. Whether the Board erred when it denied Satellite's motion to file late-filed exceptions with virtually no explanation or analysis under the correct legal standard.

2. Whether, when the correct legal standard for excusable neglect is applied, the Board was required to accept Satellite's exceptions and supporting brief.

## STATEMENT OF THE CASE

### I. Legal background

In Board proceedings, an ALJ's decision on an unfair labor practice complaint is usually not the last word. Parties can appeal the ALJ's decision to the Board by filing exceptions and a brief in support of those exceptions. *See* 29 U.S.C. § 160(c); 29 C.F.R. § 102.46. The Board then has the authority to review the ALJ's recommended order and adopt its own findings of fact and conclusions based on the record. *See Space Expl. Techs. Corp. v. NLRB*, 151 F.4th 761, 768 (5th Cir. 2025). But if a party fails to file exceptions, the ALJ's decision "automatically become[s] the decision and order of the Board" and "all objections and exceptions must be deemed waived for all purposes." 29 C.F.R. § 102.48(a); *see also* 29 U.S.C. § 160(c).

Exceptions are generally due within 28 days of the Board's decision. 29 C.F.R. § 102.46(a). But parties may request extensions of time so long as the request is "filed no later than the date on which the document is

due." 29 C.F.R. § 102.2(c). Extension requests "filed within 3 days of the due date" "must be grounded upon circumstances not reasonably foreseeable in advance." *Id.* Even when an extension motion is denied, exceptions "may be filed within a reasonable time after the time prescribed" by the Rules "upon good cause shown based on excusable neglect and when no undue prejudice would result." 29 C.F.R. § 102.2(d)(1). The Board applies the Supreme Court's *Pioneer* framework to determine whether a party has demonstrated excusable neglect justifying a late filing. *See Unitec Elevator Servs. Co.*, 337 NLRB 426, 427 (2002).

## II. Factual and procedural background

Satellite is a 501(c)(3) non-profit healthcare association. ROA.2441. (ALJ Dec. at 1). At all material times, Satellite operates dialysis centers across the state of California and other states. *Id.*

In Autumn 2022, Service Employees International Union, United Healthcare Workers-West ("Union") began organizing Satellite employees at several clinics in Northern California. ROA.2442. (ALJ Dec. at 3). Over the next year, bargaining units at seven locations would vote for Union representation. ROA.2443-45(ALJ Dec. at 4).

### A. The ALJ finds a statutory violation and imposes various remedies, including compensatory damages.

The proceeding below involved several consolidated charges relating to communications between the Union, employees supporting the Union, and Satellite before the parties commenced bargaining first contracts. ROA.2364-96 (Third Amended Complaint). Specifically, the consolidated complaint included nine counts alleging, among other things, that: (1) Satellite delayed initial bargaining sessions with the Union and responses to Union information requests; (2) Satellite withheld merit wage increases in 2023 for represented employees at the Gilroy, Morgan Hill, Blossom Valley, and San Francisco clinics; and (3) Satellite unilaterally changed time and attendance policies at the Vallejo clinic, disciplined and terminated employee Cathy Mendoza for union activity, and made coercive statements to staff. *Id.*

Satellite moved to dismiss the counts of the complaint that concerned its failure to provide annual merit wage increases after Union certification. ROA.2653-65 (MTD).[1] Satellite argued that because the

[1] At the same time, Satellite moved to stay the proceedings in light of a then recent charge that Satellite withheld merit wage increases in 2024. ROA.2662. The motion was also denied, and those separate proceedings remain pending before the Board.

Board prohibits employers from engaging in any unilateral conduct requiring managerial discretion when bargaining for an initial contract, the company could not unilaterally decide to continue with merit increases because they included substantial managerial discretion. *Id.* The Board summarily denied the motion to dismiss, without discussing the merits of the motion. ROA.2709-10 (MTD Dec.).

The case proceeded to a two-week hearing before an ALJ. On April 2, 2025, the ALJ issued a decision. ROA.2440-80 (ALJ Dec.). In it, the ALJ held that some, but not all, of the complaint's allegations were supported. ROA.2475-76 (ALJ Dec. at 36-37). For example, the ALJ held that Satellite unlawfully withheld annual merit wage increases. *Id.* The remedy included an order to make Cathy Mendoza and those who had been denied merit wage increases whole with backpay, as well as an order to "compensate Cathy Mendoza for her discharge, as well as all employees affected by the withholding of merit increases, for any other direct or foreseeable pecuniary harms incurred as a result of its unlawful actions," "[i]n accordance with *Thryv, Inc.*, 372 NLRB No. 22 (2022)." ROA.2476.

### B. Satellite's prior counsel moves for an extension of time to file exceptions to the ALJ's decision.

On April 25, 2025, Satellite's prior outside counsel moved for an extension of time to file exceptions and a brief in support of exceptions to the ALJ's decision, which the Executive secretary granted, moving the date to file exceptions from April 30 to June 6. ROA.2489 (First Extension Request). Prior counsel's request was "due to a family/medical issue" as well as "significant professional conflicts during the month of April." ROA.2487-88 (First Extension Request).

On May 27, Satellite's prior counsel changed law firms. ROA.2490. On June 6, the date the exceptions and brief were due, Satellite's prior counsel requested a short 10-day extension of time in light of counsel's law firm change and the fact that "[w]hen finalizing the exceptions and supporting briefing on June 5, to be filed on June 6, it was discovered [counsel was] missing some information from the record and client file that is needed to finalize the filing and ensure it is complete." *Id.* Counsel stated that the short extension would "allow time next week to obtain that information and ensure there is no prejudice to Respondent for un-foreseeable administrative issues that resulted from counsel's practice

transfer." *Id.* Counsel also stated that "[d]ue to the unforeseen last-minute nature of the request, Respondent was not able to fully confer on the positions of the other parties." ROA.2491.

That same day, the Executive Secretary denied the extension request. ROA.2492. The Executive Secretary asserted, without explanation, that the "request provides no unforeseen circumstances that would justify filing your request within three days of the due date." *Id.* The Executive Secretary also noted that the request had "not indicated that the other parties agree to the request." *Id.* This remark was despite Section 102.2(c)'s statement that parties are "encouraged" to seek agreement on extensions filed within 3 days and prior counsel had noted why the government had not responded.

That same day, after the Executive Secretary's decision, prior counsel filed a motion for reconsideration with the Board. ROA.2493-96. In it, prior counsel stated that "[t]he gravity of the situation was not fully discovered" until June 5 and that the situation "continued to evolve" on June 6. ROA.2493. Prior counsel further explained that she had "no control over how client files are transferred during this time of transitioning to

another employer and transitioning of client records between law firms." ROA.2494.

Prior counsel submitted exceptions to the ALJ's decision on June 7, one day after the filing deadline. ROA.2499. On June 10, the Executive Secretary rejected the exceptions and did not file them with the Board. *Id.* On June 11, the Executive Secretary, because the Board lacked a quorum, denied prior counsel's request for reconsideration of the extension motion, without explanation. ROA.2500.

On June 13, prior counsel submitted a brief in support of the exceptions. The brief took aim at several conclusions drawn by the ALJ on both liability and remedy. Among other things, the brief contended that the ALJ's award of compensatory relief under *Thryv* was contrary to the NLRA and the Seventh Amendment. Satellite Mot. to Lodge Ex. A, Dkt. 32-2 at 55-60.[2] After the brief's submission, this Court vindicated Satellite's position, holding that the Board does not have authority to award

---

[2] Concurrent with the filing of this opening appellate brief, Satellite is filing an unopposed motion to lodge with the Court its brief in support of exceptions and its letter in support of its motion to accept late-filed exceptions. The Board's position is that those submissions are not part of the administrative record under Board regulations.

*Thryv* compensatory damages like those the ALJ awarded. *See Hiran Mgmt., Inc. v. NLRB*, 157 F.4th 719, 728 (5th Cir. 2025).

On June 13, prior counsel filed a motion to accept the late filed exceptions and brief in support. In it, prior counsel stated (1) that the request for extension of time was procedurally and substantively proper and should have been granted and (2) that counsel's actions satisfied the *Pioneer* excusable neglect standard. ROA.2519-28 (Motion to Accept Late Filing).

### C. Satellite retains new counsel and files a letter in support of accepting the late-filed exceptions and brief.

In July 2025, Satellite hired new counsel for this matter at Morgan, Lewis & Bockius LLP. On July 25, newly retained counsel submitted a letter position statement in further support of the Board's acceptance of the late-filed exceptions and brief in support. Satellite Mot. to Lodge Ex. B, Dkt. 32-3. In the letter, counsel reiterated that neither the Board's General Counsel nor the Board itself could be prejudiced by the one-week delay in filing because the Board lacked a quorum to even consider the exceptions at the time. *Id.* at 2. Moreover, the letter explained that it is "well-established that the processing of exceptions to administrative law

judge decisions typically takes several months" so the brief delay could have "no effect on the overall timeline or integrity of the adjudicative process." *Id.*

The letter also detailed how "the delay was entirely beyond Satellite's control and rests solely with its prior outside counsel." *Id.* In fact, "Satellite's assigned in-house attorney, Dana Chang Dikas, remained in constant communication with [Satellite's prior outside counsel] to ensure that all aspects of the filing, including both the Exceptions and Exceptions Brief, were proceeding on schedule." *Id.* This included frequent communication with prior counsel leading up to the exceptions deadline requesting a draft. *Id.* at 3. Despite these requests, the letter detailed how prior outside counsel repeatedly promised to send draft documents but failed to do so, including sending blank PDFs the night before the filing deadline. *Id.*

The letter also described how, on the day of the filing, Satellite finally received the draft exceptions (but no brief). *Id.* Prior counsel recommended that they request an extension and represented that the "she did not anticipate the extension request to be problematic, as based on her expertise, the Board typically does not express concern over timing

issues related to this type of filing." *Id.* The letter further documented how Satellite authorized the extension request but also asked that the exceptions be filed on the due date. *Id.* Prior counsel represented that this was done. *Id.* at 4. But that representation was false. As Satellite later discovered, the exceptions were not filed until the next day, June 7. *Id.* at 3.

The letter further described how prior counsel "failed to inform Satellite of critical updates in the matter, including (i) that the initial June 6 request for extension was denied, (ii) that [prior outside counsel] filed a motion for reconsideration of such denial, without Satellite's knowledge or consent, and (iii) that the Associate Executive Secretary informed [prior outside counsel] that the Exceptions had been received on June 7 and would not be forwarded to the Board." *Id.* at 3-4. Satellite learned of these facts only after its in-house counsel, Ms. Dikas, personally looked up the docket. *Id.* at 4.

### D. The Board denies the motion to accept the exceptions and brief and adopts the ALJ's decision in the absence of exceptions.

The Board remained without a quorum for many more months—until two new members were sworn in on January 7, 2026. *See* Nat'l Lab.

Rel. Bd., Off. of Pub. Affs., James Murphy and Scott Mayer Sworn in As Board Members (Jan. 7, 2026), https://www.nlrb.gov/news-outreach/news-story/james-murphy-and-scott-mayer-sworn-in-as-board-members-0. On February 9, 2026, eight months after the submission of the exceptions and brief, a divided Board issued a terse decision denying Satellite's motion to accept its exceptions and supporting brief. The entirety of the order states:

> The Respondent's "Motion to Accept Late-Filed Exceptions and Accompanying Brief in Support" is denied. The reasons for the late filing do not rise to the level of excusable neglect. See generally *Unitec Elevator Services Co.*, 337 NLRB 426, 427 (2002) ("[I]nattentiveness or carelessness, absent other circumstances or further explanation, will not excuse a late filing.").

ROA.2529. Member Mayer dissented, stating that he would have granted the motion. *Id.*

The same day, the Board issued an order adopting the ALJ's order in the absence of exceptions. ROA.2530-31. Satellite's petition for review and the Board's cross-application for enforcement followed.

## SUMMARY OF ARGUMENT

I. The Board's order denying Satellite's motion to accept its exceptions violated the Board's obligation under the Administrative Procedure Act to engage in reasoned decisionmaking. Most fundamentally, the Board failed to provide any meaningful explanation for its order, which consisted of a conclusory statement and a generalized, out-of-context citation to a single Board precedent. This cryptic decision does not enable meaningful judicial review, and courts properly set aside Board orders grounded in such inadequate reasoning. Here, the Board's failure to explain itself is especially troubling because it foreclosed consideration of the merits of Satellite's defense.

To the extent any reasoning can be gleaned from the Board's order, that reasoning compounds the problem by suggesting that the Board applied a stricter standard for "excusable neglect" than the Supreme Court's *Pioneer* standard, which the Board purports to apply. The Board appears to have relied entirely on its view that the reason for the delayed filing was within prior counsel's control. But *Pioneer* instructs courts and agencies to consider several factors. This Court has reversed similar misapplications of *Pioneer*'s excusable neglect standard where an agency or

court placed excessive weight on the reason for the delay to the exclusion of the other factors. The Board's application of an erroneous legal standard warrants correction here, too.

II. A remand to the Board, however, is unnecessary. When the *Pioneer* factors are properly applied, they compel the Board's acceptance of the late filing. At the time of the delay (and for seven months afterward), the Board lacked a quorum and could not have lawfully entertained the exceptions and brief. Thus, there was no conceivable prejudice to the Board or anyone else or any impact on the proceedings. The delay itself was also minimal—one day late for the exceptions and less than a week for the brief.

The reason for the delay was prior outside counsel's transfer to another law firm the week before the due date and last-minute realization that not all the client files needed to complete the filing had been transferred. Prior outside counsel sought an extension on the day the exceptions were due and provided the information that the Board required. Yet the Board denied any extension based on reasons unsupported by the text of its rules. Although prior outside counsel's actions are troubling, they are not the kind of neglect that this Court has found inexcusable.

Looking to Satellite's own conduct, the outcome is even clearer. Satellite was diligent in ensuring that the exceptions were filed. But Satellite was kept in the dark about prior counsel's issues and failure to get an extension and was misled to believe that the exceptions had been filed on time as Satellite had instructed. Generally, counsel's actions would be attributable to the client. But under the circumstances here, that result would be unjust and contrary to the equitable underpinnings of the excusable neglect standard.

The Board's order should be vacated or reversed, and the cross-petition for enforcement denied.

## STANDARD OF REVIEW

The National Labor Relations Act gives courts "responsibility for assuring that the Board keeps within reasonable grounds." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 490 (1951). Courts are "not to abdicate the conventional judicial function." *Id.* Nor are courts "left merely to accept the Board's conclusions," *Brown & Root, Inc. v. NLRB*, 333 F.3d 628, 633 (5th Cir. 2003), or act as "a mere rubber stamp," *NLRB v. Arkema, Inc.*, 710 F.3d 308, 314 (5th Cir. 2013) (citation omitted). In fact, this Court and others have "long exercised equitable discretion over

whether to enter injunctions enforcing NLRB orders." *NLRB v. AllService Plumbing & Maint., Inc.*, 138 F.4th 889, 896 (5th Cir. 2025).

The Board's "action in finding lack of good cause based on excusable neglect is reviewed for abuse of discretion." *NLRB v. U.S.A. Polymer Corp.*, 272 F.3d 289, 296 (5th Cir. 2001). But the Court "review[s] the Board's legal conclusions *de novo*." *Starbucks Corp. v. NLRB*, 173 F.4th 230, 232 (5th Cir. 2026). Consistent with that de novo standard, the Court "do[es] not give deference to the NLRB's interpretation of Supreme Court rulings." *Tesla, Inc. v. NLRB*, 86 F.4th 640, 647 (5th Cir. 2023).

## ARGUMENT

### I. The Board's refusal to consider Satellite's exceptions violated its duty to engage in reasoned decisionmaking.

The Board's decision not the accept Satellite's exceptions to the ALJ's decision should be vacated at a bare minimum. The decision gave no real reasoning, much less the sort of reasoning that the Board is obligated to provide. All the majority offered was its bottom-line conclusion—"[t]he reasons for the late filing do not rise to the level of excusable neglect"—followed by a "[s]ee generally" citation. ROA.2529 (citing *Unitec*, 337 NLRB at 427 ("[I]nattentiveness or carelessness, absent other circumstances or further explanation, will not excuse a late filing.")). To the

extent any rationale can be inferred from these curt sentences, the reasoning contradicts the excusable neglect standard that the Board purports to apply. Either way, the Board failed to discharge its duty to engage in reasoned decisionmaking and the decision should at the very least be vacated.

### A. The Board had a duty to provide adequate reasons for declining to consider Satellite's exceptions.

"The Administrative Procedure Act, which governs the proceedings of administrative agencies and related judicial review, establishes a scheme of 'reasoned decisionmaking.'" *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983)). The core precept of this scheme is that "an agency must give adequate reasons for its decisions." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016).

This basic requirement safeguards the due process interests of regulated parties and is crucial for judicial review. Reviewing courts have a statutory duty to set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). To perform that duty, courts must "scrutinize the record to

determine whether the agency has 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *Nat'l Ass'n of Priv. Fund Managers v. SEC*, 151 F.4th 252, 260-61 (5th Cir. 2025) (citation modified) (quoting *State Farm*, 463 U.S. at 43); *see also Encino Motorcars*, 579 U.S. at 221.

These principles ensure that agencies reasonably exercise the authority Congress has given them. After all, a "failure to consider all the relevant factors and provide a reasoned basis for the agency's decision may render an opinion arbitrary and capricious." *Pennzoil Co. v. FERC*, 789 F.2d 1128, 1139 n.31 (5th Cir. 1986); *see also, e.g.*, *Michigan v. EPA*, 576 U.S. 743, 750 (2015) ("[A]gency action is lawful only if it rests 'on a consideration of the relevant factors.'" (quoting *State Farm*, 463 U.S. at 43)). Administrative law's emphasis on the reasonable exercise of agency authority is so strong that reviewing courts are confined to accepting the agency's actual reasoning. A court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Nat'l Ass'n of Priv. Fund Managers*, 151 F.4th at 260-61 (quoting *State Farm*, 463 U.S. at 43); *see SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

This Court and others have properly held the Board to these requirements, even in contexts where Congress gave the Board substantial discretion. *See, e.g.*, *NLRB v. Purnell's Pride, Inc.*, 609 F.2d 1153, 1161 (5th Cir. 1980) (denying enforcement of Board's order where "the reasons supporting the Decision and Direction of Election [were] not sufficiently articulated to permit proper judicial review" and "the Board failed to meet its obligation to 'disclose the basis of its order.'" (citation omitted)); *Dish Network Corp. v. NLRB*, 953 F.3d 370, 380 (5th Cir. 2020) (denying enforcement of Board's order based on unarticulated rationale because courts "look to what the agency said, not what it might have said").

Other courts likewise "remand where a Board order 'reflects a lack of reasoned decisionmaking.'" *Tramont Mfg., LLC v. NLRB*, 890 F.3d 1114, 1119 (D.C. Cir. 2018) (citation modified). A lack of reasoned decisionmaking can arise, among other examples, if the Board relies only on precedent that does not justify its decision, *e.g.*, *Long Island Head Start Child Dev. Servs. v. NLRB*, 460 F.3d 254, 259 (2d Cir. 2006); *Bro-Tech Corp. v. NLRB*, 105 F.3d 890, 897 (3d Cir. 1997); *Penrod v. NLRB*, 203 F.3d 41, 46 (D.C. Cir. 2000); fails to address some of a party's "most critical arguments," *NLRB v. Forsyth Elec. Co.*, 69 F. App'x 164, 167 (4th Cir.

2003); or applies a standard different from the standard that the Board formally purports to apply, *Allentown Mack*, 522 U.S. at 374. As discussed next, these problems are on full display here.

### B. The Board's decision must be vacated because it failed to provide adequate reasons.

The Board failed to engage in reasoned decisionmaking in denying Satellite's motion to accept the late exceptions and brief. As noted, the entirety of the Board's reasoning in denying that motion consisted of (1) a statement that Satellite failed to demonstrate excusable neglect, and (2) a citation and quotation from the Board's decision in *Unitec*. ROA.2529. Neither point justifies the Board's decision.

First, the Board's statement that Satellite did not satisfy the "excusable neglect" standard is simply the Board's ultimate conclusion under the applicable rule. The Board's rules expressly adopt the "excusable neglect" standard. 29 C.F.R. § 102.2(d)(1). So this statement does no more than articulate the Board's conclusion without explaining the basis for that conclusion.

Next, the Board's citation of *Unitec*, 337 NLRB at 427, cannot fill the gap. That decision simply announced and described the excusable neglect standard based on the standard adopted by the Supreme Court in

*Pioneer*. In doing so, *Unitec* analyzed facts that bear no resemblance to this case.

In *Unitec*, the party filed a document late based on a mistaken calculation of the due date. 337 NLRB at 428. The Board surveyed precedent addressing filings that were late because of miscalculated due dates, and it ruled that a "late document will not be excused when the reason for the tardiness is solely a miscalculation of the filing date." *Id.* Still, the Board allowed the filing in that case because the Board's prior decisions and practice may have caused confusion and a perception of ambiguity. *Id.*

This case, in contrast, does not involve miscalculating the deadline. Rather, prior outside counsel provided several reasons for the delayed filing stemming from her transition to a new law firm, showed how a late filing could not possibly prejudice the Board or the General Counsel, and requested a short extension of time on the due date of the filing (which Board rules allow). ROA.2519-28. Then, through new outside counsel, Satellite further demonstrated to the Board that the company had diligently directed prior counsel to file on time but was misled by prior counsel's promises about when Satellite would receive a draft, how the Board would treat the extension request, and whether the exceptions had been

filed on the due date as Satellite instructed. *See* Satellite Mot. to Lodge Ex. B, Dkt, 32-3. And Satellite underscored that a rejection of the filing was particularly inappropriate when the Board's lack of quorum meant that the Board could not have entered timely exceptions in the first place.

The Board never addressed any of these arguments. Instead, it relied solely on *Unitec*, even though its discussion never touches on the issues Satellite raised. On the contrary, it used a "see generally" signal for its citation, suggesting it recognized that *Unitec* was not directly on point. Citing a single Board decision that does not address the issues at hand is "a classic case of lack of reasoned decisionmaking." *Penrod*, 203 F.3d at 46 (granting petition for review because "[i]nstead of answering [a key] question, the Board simply cited [one case] as though the case dealt with this same type of [conduct]"); *see also Long Island Head Start*, 460 F.3d at 259 (granting petition for review because the Board's cited decisions did not explain why the rule in those decisions should be extended); *Forsyth*, 69 F. App'x at 167 (granting petition for review because the Board "inexplicably failed to address some of [the employer's] most critical arguments").

The Board's lack of analysis suffices on its own to set aside its decision. In analogous circumstances, for example, this Court has vacated a district court's finding of no excusable neglect under Rule 60(b)(1) of the Federal Rules of Civil Procedure precisely because the district court failed to analyze the full range of factors relevant to excusable neglect in the context of a default judgment. *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 120 (5th Cir. 2008) ("The district court reached no finding as to willfulness, prejudice, or the merit of Ms. Felderhof's asserted defenses. Nor did the district court provide any indication as to whether the remaining factors favor granting or denying relief from the default judgment under Rule 60(b)(1)."). "Without guidance from the district court as to the basis for its Rule 60(b)(1) decision," this Court was unable to "determine whether the district court abused its discretion . . . [and] constrained to vacate this portion of the district court's order." *Id.* at 124.

The Board's single quotation from *Unitec* also does not help illuminate the Board's reasoning here—let alone justify the Board's decision. In full, that quoted sentence states: "Consistent with *Pioneer* and these [other] court decisions, the Board has generally held that inattentiveness or carelessness, absent other circumstances or further explanation, will

not excuse a late filing." *Unitec*, 337 NLRB at 427. On its face, this sentence merely states how the Board "generally" approaches these matters, while expressly recognizing that (unspecified) "other circumstances or further explanation" can excuse a late filing based on "inattentiveness or carelessness." *Id.* The Board's decision here, however, says nothing about the circumstances and explanation Satellite put forward, let alone explain why they were insufficient.

To be sure, the Board's quotation here truncated the sentence it quoted from *Unitec* and dropped the "generally" qualification and the reference to *Pioneer*. But if the Board did so because it meant to endorse a stricter rule that does not excuse any inattentiveness or carelessness, that would merely replace one problem with another. As noted, the reasoned decisionmaking requirement requires the Board "to apply in fact the clearly understood legal standards that it enunciates in principle." *Allentown Mack*, 522 U.S. at 376-77. And *Unitec* plainly embraces the Supreme Court's "excusable neglect" test from *Pioneer* when evaluating whether to accept a late filing. *See Unitec*, 337 NLRB at 427 (stating that the Board was applying an excusable neglect standard "consistent with *Pioneer*" and court decisions that likewise applied *Pioneer*); *see also, e.g.*,

*KSL Claremont Resort, Inc.*, 344 NLRB 832, 835 (2005) (describing *Unitec* as having "held that 'excusable neglect' would be analyzed pursuant to *Pioneer*"); *Am. Baptist Homes of the W.*, No. 32-CA-25247, 2011 WL 5822389, at *1 (N.L.R.B. Nov. 16, 2011) (citing *Pioneer* in granting the Board general counsel's motion to accept late-filed exceptions). If the Board here deliberately gave decisive weight to a determination that prior counsel was inattentive or carelessness, its decision would improperly contradict the *Pioneer* standard that the Board properly purports to follow.

*Pioneer* explicitly rejected the argument that "any showing of fault on the part of the late filer would defeat a claim of 'excusable neglect.'" 507 U.S. at 387-88. After all, the standard's very premise is that neglect can be *excusable*. As the Court explained, the plain meaning of the words "excusable neglect" encompasses "both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Id.* at 388. Adjudicators therefore are "permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* Whether it is ap-

propriate to accepting such filings depends on (1) "the danger of prejudice" to others, (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) whether the party seeking relief "acted in good faith." *Id.* at 395. The Court stressed that the concept is "elastic" and that the inquiry should be done by "taking account of all relevant circumstances surrounding the party's omission." *Id.*

Here, in contrast, the Board apparently focused solely on whether prior counsel was at fault for the failure to file the exceptions on time. That is the only factor the Board cited, and there is no hint that the Board considered any of the other *Pioneer* factors or any of the other circumstances Satellite identified. In short, rather than consider whether any neglect was excusable, the Board appears merely to have asked whether there was neglect.

This Court has vacated an administrative agency's application of the "excusable neglect" standard on materially indistinguishable facts. *See Coleman Hammons*, 942 F.3d at 283. There, the U.S. Department of Labor's Occupational Safety & Health Review Commission had similarly

refused to excuse an untimely filing because it "placed virtually exclusive emphasis on the reason for [the parties'] delay." *Id.* The Court held that the agency's decision was "arbitrary and capricious and not in accord with law." *Id.* at 284. The *Pioneer* standard demands an "equitable" determination, "taking account of all relevant circumstances." *Id.* at 282-83 (quoting *Pioneer*, 507 U.S. at 395). The agency in *Coleman Hammons* described "the reason for the employer's delay" as a "key factor" in the analysis. *Id.* at 283. But this Court recognized that under *Pioneer*, "'key factor' cannot mean 'the only factor.'" *Id.* On the contrary, "[f]ocusing narrowly on whether a party is at fault for the delay and denying relief if it bears any blame *clearly conflicts* with *Pioneer*'s more lenient and comprehensive standard." *Id.* (emphasis added); *see also id.* at 286 (Jones, J., concurring) ("[T]he [*Pioneer*] Court's explanation of 'excusable neglect' is definitive as a matter of law.").

This Court has also reversed a district court on the same ground. *See In re Christopher*, 35 F.3d 232, 235-36 (5th Cir. 1994). There, a district court sat in appellate review of a bankruptcy court and held that the appellant's "confusion on the law did not constitute excusable neglect" to justify a late-filed notice of appeal. *Id.* at 235. This Court determined that

the district court erroneously "applied a very high standard of excusable neglect, rejecting any negligence by the attorney as an excuse." *Id.* Using "such a standard was error in light of the Supreme Court's decision in *Pioneer*." *Id.* at 235-36. At the same time, this Court faulted the bankruptcy court for granting an extension of time without making the necessary findings to support the extension. *Id.* at 236. So this Court reversed the district court's judgment dismissing the appeal and remanded the case to the bankruptcy court for the requisite findings. *Id.*

The same approach is warranted here. Like the agency in *Coleman Hammons* and the district court in *In re Christopher*, the Board seems to have focused entirely on its view of the fault of prior counsel without considering the other *Pioneer* factors. This apparent contradiction between the Board's terse statements and the flexible *Pioneer* standard makes the terseness especially troubling. The Supreme Court has been clear: "[b]ecause reasoned decisionmaking demands it, and because the systemic consequences of any other approach are unacceptable, the Board must be required to apply in fact the clearly understood legal standards that it enunciates in principle." *Allentown Mack*, 522 U.S. at 376. "Reviewing courts are entitled to take those standards to mean what they

say, and to conduct [judicial] review on that basis." *Id.* at 376-77. So an unexplained departure from the Supreme Court standard that the Board has adopted cannot stand. Perhaps the Board could announce a new rule "imposing a more stringent requirement than" the *Pioneer* standard. *Id.* at 373-74. But the order in this case did not do so, and unless the Board lawfully changes course, it must adhere to the Administrative Procedure Act's procedural requirements. *See, e.g.*, *Brown-Forman Corp. v. NLRB*, 169 F.4th 646, 658 (6th Cir. 2026) ("[I]f the Board decides to make policy through adjudication, it must abide by the procedural limitations Congress placed on its adjudicatory authority.").[3]

[3] Satellite acknowledges that an unpublished opinion of this Court rejected a petition for review where the Board cited *Unitec* when declining to entertain an employer's untimely exceptions. *NLRB v. Tri-Cnty. Elec. Coop., Inc.*, No. 21-60887, 2023 WL 5040960, at *1 (5th Cir. Aug. 8, 2023). In that case, however, the employer appears to have relied on counsel's "mistake" about how the NLRB's deadline, and the Court does not address any argument by the employer that the Board failed to engage in reasoned decisionmaking or departed from *Pioneer*. Because *Tri-County* does not address Satellite's arguments here and because it, unlike *Coleman Hammons* and *In re Christopher*, is nonprecedential in all events, *Tri-County* does not support enforcing the Board's order in this case.

## II. The Board must accept the late-filed exceptions under the *Pioneer* standard.

The procedural problems with the Board's ruling and application of an erroneous standard more than suffice to vacate the Board's order and remand for further proceedings. *See, e.g.*, *Starbucks*, 173 F.4th at 234 ("Because the Board considered this case under the incorrect standard, vacatur and remand are the appropriate disposition."). But if the Court were to apply the proper standard in the first instance to the record before the Board, the only supported outcome would be that the Board should have granted Satellite's motion and accept the exceptions and brief in support of exceptions. Each of the *Pioneer* factors supports excusable neglect.

***Danger of prejudice***. "The first factor the Supreme Court considers is the danger of prejudice." *Razvi v. Dall. Fort Worth Int'l Airport*, No. 21-10016, 2022 WL 4298141, at *2, *8 (5th Cir. Sept. 16, 2022) (per curiam) (applying the *Pioneer* factors to reverse the district court's denial of Rule 60(b)(1) relief). Here, there was no danger of prejudice to the General Counsel or Charging Party from prior counsel's one-day delay in filing the exceptions or weeklong delay in filing the brief. Even in ordinary circumstances, consideration of exceptions generally takes months, such

that a weeklong delay would not meaningfully prejudice anyone. Satellite Mot. to Lodge Ex. B, Dkt. 32-3 at 3.

But the lack of prejudice in this case is unusually clear. Here, the Board had fewer than three Members and thus lacked a quorum at the time of the late filing. *See* 29 U.S.C. § 153(b) ("[T]hree members of the Board shall, at all times, constitute a quorum of the Board[.]"); *New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 688 (2010) ("Congress' decision to require that the Board's full power be delegated to no fewer than three members . . . must be given practical effect[.]"). As a result, the Board could not have entertained timely exceptions or briefing, let alone rule on them, before it regained its quorum in January 2026. *Cf.* 29 C.F.R. § 101.11(b) ("[P]arties or counsel for the Board may file exceptions to the administrative law judge's decision *with the Board*." (emphasis added)). The late filing had no effect on the proceedings below. Indeed, the Board did not even resolve the motion until February 2026—eight months after the motion was filed—because the Board lacked a quorum for so long. ROA.2529 (Board Dec.).

***The length of delay***. Courts have concluded that the second factor favors parties whose filings much later than the filings here. *See Razvi*,

2022 WL 4298141, at *1, *3 (30-day delay considered short); *City of Chanute, Kan. v. Williams Nat. Gas Co.*, 31 F.3d 1041, 1046-47 (10th Cir. 1994) (describing a 31-day delay as "a very short time in the context of a protracted litigation battle"). And, for the reasons discussed above, the delay could not have delayed the Board's consideration because the Board lacked the power to adjudicate exceptions cases at the time.

***Reason for the delay***. This factor also supports excusing the late filing, whether viewed through the lens of prior counsel's conduct or Satellite's. The reason for the late filing was not a failure to properly read the rules or a mistake concerning time zones, but rather prior counsel's realization on the day before the due date that she had not received all of the relevant client files in the transition between law firms, a process at least partly outside her control. ROA.2490. That transition occurred on May 27, 2025—10 days before the due date for the exceptions and brief in support. *Id*. Moreover, prior counsel did not simply ignore the due date but requested an extension of time and an expedited motion for reconsideration of the denial of that request. ROA.2490-91; ROA.2492; ROA.2493-96.

The Executive Secretary denied that request, but without adequate explanation and at odds with the text of the Board's rules. ROA.2492. Section 102.2(c) of the Board's Rules and Regulations explicitly allows for an extension request "filed no later than the date on which the document is due," although "requests for extensions of time filed within 3 days of the due date must be grounded upon circumstances not reasonably foreseeable in advance." 29 C.F.R. § 102.2(c). The rule also states that "Parties are *encouraged* to seek agreement from the other parties for the extension" but does not require the other parties' agreement. *Id.* (emphasis added). Despite these statements, the Executive Secretary denied the extension request partly based on prior counsel's failure to "indicate[] that the other parties agree[d] to the request." ROA.2492. In doing so, the Executive Secretary imposed a requirement not found in the rule. Nor did the Executive Secretary explain why the reasons prior counsel gave for not filing an extension request earlier were insufficient under the rule. Prior counsel's conduct before the Board was far from exemplary, but it was not the kind of conduct that this court has found inexcusable.

And even setting aside prior counsel's reason for delay, the failure to file the exceptions and brief in support on time was beyond Satellite's

control. Satellite's assigned in-house attorney, Ms. Dikas, remained in constant communication with prior counsel to ensure that all aspects of the filing, including both the exceptions and brief, were proceeding on schedule. Satellite Mot. to Lodge Ex. B, Dkt. 32-3 at 2-3. At each step, prior counsel assured Ms. Dikas that she would receive the draft documents before the filing deadline. *Id.* On the day of the filing, when prior counsel finally sent a draft of the exceptions brief, prior counsel proposed seeking an extension but represented that the extension would be granted as a matter of course. Ms. Dikas relied on this advice and approved seeking the extension but still instructed that the exceptions be filed on the due date. *Id.* at 3. Prior counsel then represented that the exceptions were filed. *Id.*

After the due date, prior counsel kept Ms. Dikas in the dark. Ms. Dikas was not informed that the extension was denied or that prior counsel had filed a motion for reconsideration. *Id.* at 3-4. Ms. Dikas also was unaware that prior counsel actually filed the exceptions on June 7, as opposed to June 6 as Ms. Dikas had instructed, and that the Executive Secretary had notified prior counsel that they would not be forwarded to the Board. *Id.* at 4.

The general rule, to be sure, is that "clients must be held accountable for the acts and omissions of their attorneys." *Pioneer*, 507 U.S. at 396. But in certain contexts, courts "have declined to impute attorney misconduct to a client where the attorney has made misrepresentations to the client" and "disregarded the client's instructions." *Downs v. McNeil*, 520 F.3d 1311, 1321 (11th Cir. 2008) (collecting cases); *see also, e.g., United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (holding that a plaintiff's "allegation that he was deceived by his attorney into believing that a timely § 2255 motion had been filed on his behalf presents a 'rare and extraordinary circumstance' beyond petitioner's control that could warrant equitable tolling of the statute of limitations"); *cf. Associated Marine Equip. LLC v. Jones*, 301 F. App'x 346, 350 (5th Cir. 2008) (per curiam) (holding that party may be entitled to relief from a judgment when "he could not contact his counsel despite his repeated attempts to do so").

Prior counsel engaged in similarly serious misconduct here. At each step of the process, prior counsel made misrepresentations to Satellite about the status of the draft exceptions and brief, as well as when the brief was filed. Satellite relied on its counsel who was listed as an "expert"

in employment law from a large law firm but also diligently followed up about the case at each step. Satellite Mot. to Lodge Ex. B, Dkt. 32-3 at 4. So even if the Court finds that prior counsel's reason for delay would weigh against excusable neglect standing alone, Satellite's inability to file the exceptions and brief on time were plainly beyond its control.

***Evidence of good faith action.*** Although prior counsel did not always act in good faith with respect to Satellite, there is no evidence that prior counsel, much less Satellite, acted with less than good faith with the Board. Prior counsel sought an extension that was allowable under the Board's rules and expeditiously appealed its denial. And Satellite, for its part, diligently sought to meet the filing deadline by following up with prior counsel and instructing prior counsel to file the exceptions on the due date even if the brief was not ready. When Satellite learned that prior counsel had not done so, Satellite retained new counsel to represent it before the Board and on appeal here. Moreover, although the substance of Satellite's challenges to the ALJ decision are not before the Court in the current procedural posture, at least some of those challenges have merit that is easy to see. As discussed above, this Court has already adopted Satellite's position that the Board lacks statutory authority to

impose its *Thryv* compensatory remedy. *See Hiran Mgmt.*, 157 F.4th at 728. That simple example confirms that requiring the Board to entertain Satellite's challenges would not be a futile endeavor.

*        *        *

The "totality of the circumstances" weigh strongly in favor of excusable neglect. *Coleman Hammons*, 942 F.3d at 284. Failing to accept the exceptions and brief in support would foreclose any review of the merits of the ALJ's decision. Subjecting Satellite to such a harsh sanction, particularly in light of prior counsel's actions, would be contrary to the equitable roots of the excusable neglect standard. *Bennett v. GEO Grp., Inc.*, No. 12-60017, 2013 WL 5916765, at *3 (5th Cir. May 22, 2013) ("[A]n equitable standard is used to determine excusable neglect.").

## CONCLUSION

The Board's Order should be vacated, the application for enforcement should be denied, and the case should be remanded to the Board for further proceedings.

Dated: June 10, 2026

Respectfully submitted,

s/ Michael E. Kenneally
MICHAEL E. KENNEALLY
BRENDAN J. ANDERSON
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000

*Counsel for Satellite Healthcare, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this day, June 10, 2026, I served a true and correct copy of the foregoing Brief of Petitioner/Cross-Respondent Satellite Healthcare, Inc. on counsel of record for all other parties through this Court's CM/ECF system.

Ruth E. Burdick
Usha Dheenan
Jared H. Odessky
National Labor Relations Board
1015 Half Street, SE
Washington, DC 20570
(202) 273-2960
appellatecourt@nlrb.gov
usha.dheenan@nlrb.gov
jared.odessky@nlrb.gov

Dated: June 10, 2026

s/ Michael E. Kenneally
MICHAEL E. KENNEALLY

*Counsel for Satellite Healthcare, Inc.*

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), this document contains 8,087 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and 5th Cir. R. 32.1, and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document was prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.

Dated: June 10, 2026

s/ Michael E. Kenneally
MICHAEL E. KENNEALLY

*Counsel for Satellite Healthcare, Inc.*